IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERESA BRUNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 15 C 9726 |
| v. ) | |
| ) | Judge John Z. Lee |
| ALLIANCEONE RECEIVABLES ) | |
| MANAGEMENT, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Teresa Bruner ("Bruner") brought this action against Defendant AllianceOne Receivables Management, Inc. ("AllianceOne"). She challenges certain actions AllianceOne took to collect a debt from her under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.* AllianceOne has moved to dismiss part of Bruner's First Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, AllianceOne's motion to dismiss [30] is granted in part and denied in part.

## Background

In 2006, Bruner took out a residential mortgage from CitiMortgage, Inc. that she was unable to pay back. Am. Compl. ¶ 11, ECF No. 29. She filed for bankruptcy in 2008, which resulted in discharge of her debt on the mortgage loan. *Id.* ¶¶ 12, 15. The order discharging her debt on the loan "prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is

not permitted to contact a debtor by mail, phone, or otherwise . . . , or take any other action to collect a discharged debt from the debtor." *Id.*, Ex. C.[1] Thus, Bruner is no longer personally liable for the debt on her mortgage loan. Am. Compl. ¶ 18.

In 2015, AllianceOne acquired servicing rights to the debt. *Id.* ¶ 20. Then, purportedly acting with knowledge of her bankruptcy, AllianceOne sent a dunning letter to Bruner regarding the debt on September 18, 2015. *Id.* ¶¶ 23–24. The letter explained that AllianceOne was attempting to collect the debt and that "any information obtained [would] be used for that purpose." *Id.*, Ex. D. In addition to sending the letter, AllianceOne allegedly made at least eleven phone calls to Bruner's cell phone using various phone numbers over a six-week period.[2] *Id.* ¶¶ 27–28. Bruner felt harassed by AllianceOne's actions and was concerned and confused about her rights post-bankruptcy. *Id.* ¶¶ 29, 31–32. She therefore consulted with counsel "to ensure that Defendant's collection efforts ceased." *Id.* ¶ 29. This lawsuit soon followed.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[1] The Court can consider this and all other attachments to Bruner's complaint in ruling on AllianceOne's motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[2] The complaint does not explicitly state that the calls occurred over a six-week period, but it states that the calls began "shortly after" AllianceOne sent the dunning letter. *Id.* ¶ 27. It is reasonable to infer that they ended no later than when Bruner filed her suit on October 30, 2015.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Count I: FDCPA

In Count I, Bruner alleges that AllianceOne has violated three different provisions of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f. AllianceOne does not challenge Bruner's claim under § 1692e.

#### A. Section 1692d

AllianceOne first challenges Bruner's claim under § 1692d. Under this provision, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Bruner alleges that AllianceOne's dunning letter and "relentless[]" calls harassed, oppressed, and abused her. Am. Compl. ¶ 41. To that end, Bruner focuses on one particular type of conduct specified in the statute:

3

"Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

AllianceOne argues that Bruner's allegations of a single letter and at least eleven calls to her cell phone over a span of six weeks do not amount to a violation of § 1692d as a matter of law. Mot. Dismiss 4, ECF No. 30. As an initial matter, AllianceOne contends that sending a single collection letter that is not threatening or profane cannot constitute a violation of § 1692d. *Id.* at 4–5. Bruner does not dispute this point in her response, and courts have generally held that sending a single collection letter in this fashion cannot give rise to a claim under § 1692d. *See, e.g., Harrer v. RJM Acquisitions, LLC*, No. 10-CV-7922, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012).

The focus of Bruner's claim is instead the eleven calls she claims that AllianceOne made to her cell phone over a six-week period. AllianceOne contends that these calls do not violate § 1692d(5) as a matter of law because they cannot of themselves demonstrate an intent to annoy, abuse, or harass.[3]

There is no precise test for determining when repeated phone calls violate § 1692d(5). *Allen v. Bank of Am., N.A.*, No. 11 C 9259, 2012 WL 5412654, at *7 (N.D. Ill. Nov. 6, 2012) ("The Seventh Circuit has not articulated a standard for

---

[3] AllianceOne also makes the narrower argument that Bruner did not plead the word "intent" in connection with her § 1692d(5) claim. Mot. Dismiss at 5. The Court is satisfied, however, that Bruner's description of AllianceOne's conduct and her characterization of that conduct as "relentless[]" and "repeated" is sufficient for the purposes of Rule 8. *See* Am. Compl. ¶¶ 40–42.

4

evaluating § 1692d claims."). But in ascertaining whether repeated phone calls were made with the requisite intent, courts of this circuit typically look to the volume and pattern of calls made, as well as whether a plaintiff has requested that a collection agency stop calling. *Kube v. Creditors Collection Bureau, Inc.*, No. 10 C 7416, 2012 WL 3848300, at *2 (N.D. Ill. Aug. 30, 2012); *Majeski v. I.C. Sys., Inc.*, 08 CV 5583, 2010 WL 145861, at *3 (N.D. Ill. Jan. 8, 2010). A district court outside this circuit has summarized relevant factors as including "the volume, frequency, and persistence of calls," "whether defendant continued to call after plaintiff requested it cease," and "whether plaintiff actually owed the alleged debt." *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 228 (D. Mass. 2014). Typically, whether conduct violates § 1692d(5) is a factual inquiry that is inappropriate to conduct on a motion to dismiss. *Allen*, 2012 WL 5412654, at *7 (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

Here, the Court cannot find that, as a matter of law, AllianceOne's purported calls do not violate § 1692(d). Eleven (or more) unwanted phone calls from various numbers could be indicative of intent to harass Bruner. Other district courts have permitted claims to proceed at the motion to dismiss stage based on this volume of calls (or fewer). *Carr v. NCO Fin. Sys., Inc.*, No. CIV.A. 11-2050, 2011 WL 6371899, at *3 (E.D. Pa. Dec. 20, 2011) (nine specifically identified calls plus "other calls"); *Valentine v. Brock & Scott*, PLLC, No. 2:09-CV-2555-PMD, 2010 WL 1727681, at *4 (D.S.C. Apr. 26, 2010) (eleven calls). Without more, the Court cannot adequately assess whether the pattern and frequency of these calls over the six-week period

5

increase or decrease the likelihood of intentional harassment. While the courts faced with a similar volume of calls were also presented with shorter time periods, *Carr*, 2011 WL 6371899, at *3 (thirty days); *Valentine*, 2010 WL 1727681, at *4 (nineteen days), the Court does not believe this should foreclose Bruner's claim at this stage. Given the circumstances alleged, an average of two calls per week plausibly indicates intent to harass or annoy.[4]

In addition to the volume and frequency of calls, Bruner maintains that she is not personally liable for the debt, which also weighs in favor of permitting her claim to proceed. *Davis*, 36 F. Supp. 3d at 228. And finally, while Bruner does not claim that she asked for the calls to stop, the Court will not hold that against her at this stage. At this posture, the Court must draw the reasonable inference in her favor that, at least for some of the calls, she had good reason not to answer: namely, she may have feared the dunning letter's warning that "[t]his is an attempt to collect a debt, and any information obtained will be used for that purpose."[5] Am. Compl., Ex. D.

---

[4] AllianceOne directs the Court to *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610 (E.D. Pa. 2015), in which the court concluded that allegations of at least eleven calls over a period of six months did not state a claim for relief under § 1692d(5). *Id.* at 621. But the *Zarichny* court expressly relied on the period of six months, *id.*, which is much longer than that at issue in this case.

[5] The complaint does not specify whether the calls went unanswered, or whether Bruner spoke with a representative of AllianceOne. At the summary judgment stage, some courts have taken unanswered calls to suggest difficulty reaching the plaintiff, rather than intent to harass. *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009). But as stated previously, the Court must draw all reasonable inferences in Bruner's favor at this stage, and it therefore will not infer that AllianceOne had difficulty reaching Bruner.

The parties debate the applicability of various summary judgment decisions in which courts have held that a reasonable jury could find a § 1692d(5) violation based on a volume of calls larger than that Bruner alleges she endured. *See* Resp. 4–5, ECF No. 36; Reply 3–4, ECF No. 38. These cases are of little relevance at this time. At the summary judgment stage, after development of a full record (from which the courts in the cases cited by the parties benefited), the Court can fully assess whether a reasonable jury could find in Bruner's favor. At this stage, however, based on the Court's foregoing analysis, she states a plausible claim for relief. AllianceOne's motion to dismiss Bruner's § 1692d claim is therefore denied.

### B. Section 1692f

Bruner's final claim under the FDCPA is that AllianceOne violated § 1692f. Under this provision, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Bruner asserts in part that, by attempting to collect a debt discharged in bankruptcy, AllianceOne has committed conduct specifically barred by § 1692f: "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

In analyzing Bruner's § 1692f claim, the Court must consider the claim from the perspective of an unsophisticated debtor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The question of whether means are unfair or unconscionable "requires a fact-bound interpretation" of how an unsophisticated debtor would perceive the means alleged. *Id.* at 759; *see also Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) ("[T]he existence of a violation hinges

7

on objective factors that relate to a consumer who receives the demand for payment."). Additionally, "[w]hether the collection of a debt violates § 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." *Turner*, 330 F.3d at 996.

In *Turner v. J.V.D.B. Associates, Inc.*, the Seventh Circuit dealt with a case in which a debt collector sent a dunning letter much like that in this case to the plaintiff, seeking to collect a debt discharged in bankruptcy. *Id.* at 995. The court observed that, like in this case, the contents of the letter tracked requirements for such letters specified in § 1692g(a), under which debt collection letters must provide various items of information to their recipients. *Id.* at 997–98. Noting that there could nevertheless be liability for collecting a discharged debt under another provision of the FDCPA (§ 1692e), the court refused to hold that such conduct also violates § 1692f. Instead, the court concluded that it "[did] not see how a reasonable jury could conclude that furnishing this information would, in any sense, be an 'unfair or unconscionable means' of debt collection when directed toward an unsophisticated but reasonable consumer whose debt had been discharged in bankruptcy." *Id.* at 998. The court's specific holding was as follows: "a letter simply providing the information required by § 1692g(a) is not an unfair or unconscionable means of debt collection under § 1692f." *Id.*

Thus, under *Turner*, Bruner cannot state a claim under § 1692f merely based on the dunning letter she alleges AllianceOne sent. But Bruner's claim, of course, is based on more than the letter; it is based on the letter in conjunction with the

8

eleven (or more) phone calls she alleges AllianceOne placed to her cell phone. Recognizing this, AllianceOne seeks to dismiss Bruner's § 1692(f) claim based on a broader construction of the holding in *Turner*. It cites *Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013), in which the Seventh Circuit summarized its holding in *Turner* as follows: "Asking a consumer to pay a debt discharged in bankruptcy . . . is not unfair or unconscionable within the meaning of § 1692f, though it violates another provision of the FDCPA." *Id.* at 739. Based on this summary, AllianceOne insists that *Todd* controls and disposes of this case, because all Bruner claims that AllianceOne did is ask her to pay a debt discharged in bankruptcy. Mot. Dismiss at 5; Reply at 5.

AllianceOne reads *Todd*, however, for more than it is worth. *Todd*'s reference to "[a]sking a consumer to pay a debt" cannot be construed to encompass more than the conduct that was at issue in *Turner*: simply sending a § 1692g(a)-compliant dunning letter. Bruner, however, alleges eleven phone calls in addition to AllianceOne's dunning letter. Where a plaintiff alleges conduct beyond a § 1692g(a)-compliant dunning letter, courts of this circuit have regularly held that the plaintiff states a claim under § 1692f. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2015 WL 1910989, at *4 (N.D. Ill. Apr. 27, 2015) ("*Turner* does not apply to [alleged] telephone communications."); *Gritters v. Ocwen Loan Servicing, LLC*, No. 14 C 00916, 2014 WL 7451682, at *7 (N.D. Ill. Dec. 31, 2014); *see also Gros v. Midland Credit Mgmt., Inc.*, No. 06 C 5510, 2008 WL 4671717, at *7 (N.D. Ill. Oct. 20, 2008) (holding plaintiff had established a triable issue of fact where

9

defendant's conduct went beyond sending a § 1692g(a)-compliant dunning letter, because "[i]t may very well be that an unsophisticated consumer would feel that they were unfairly treated in receiving three letters and four phone calls about a debt that had already been discharged"). The Court sees no reason to deviate from these holdings. AllianceOne's argument based on *Todd* is therefore rejected.

AllianceOne also seeks to dismiss Bruner's § 1692(f) claim on the basis that unanswered telephone calls cannot violate the statute. Resp. at 6. AllianceOne asserts that unanswered calls are not "communications" and thus cannot violate the FDCPA. *Id.* This argument fails in two respects. First, as previously noted, Bruner's complaint does not state that AllianceOne's calls were unanswered. Second, AllianceOne's position that unanswered calls are not "communications," and thus cannot violate the FDCPA, is incorrect. In some respects, the argument proves too much: if unanswered calls could not violate the FDCPA in any respect, § 1692d(5)'s bar on "[c]ausing a telephone to ring" would be superfluous. But more to the point, the language of § 1692f does not require a "communication," as that term is used in the FDCPA. *See* 15 U.S.C. § 1692(a)(2); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS NLS, 2011 WL 3176453, at *4 (S.D. Cal. July 26, 2011) (holding that § 1692f "do[es] not require a 'communication'"). AllianceOne cites various cases in support of its position, Mot. Dismiss at 6–7, but each addresses a portion of the statute that expressly requires a "communication." *Davis v. Phelan Hallinan & Diamond, PC.*, No. CV 15-3621 (RBK-AMD), 2016 WL 1078166, at *4 (D.N.J. Mar. 18, 2016) (discussing § 1692c(b), which concerns debt

collectors' "[c]ommunications with third parties"); *Worsham v. Acct. Receivables Mgmt., Inc.*, No. CIV. JKB-10-3051, 2011 WL 5873107, at *3 (D. Md. Nov. 22, 2011) (applying § 1692b(3), which limits "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer"); *Wilfong v. Persolve, LLC*, No. CIV. 10-3083-CL, 2011 WL 2678925, at *2 (D. Or. June 2, 2011) (analyzing § 1692c(c), which concerns debt collectors "[c]easing communication" with consumers). Bruner therefore need not allege a "communication" to make out her § 1692f claim. For these reasons, AllianceOne's motion to dismiss Bruner's § 1692f claim is denied.

## II. Count II: ICFA

In Count II of her complaint, Bruner alleges that AllianceOne, by "engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempts to collect [Bruner's] discharged debt," violated the ICFA. Am. Compl. ¶ 56. Under the ICFA, "[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2. The elements of a cause of action for damages under the ICFA are: "(1) a deceptive act or practice by [defendant]; (2) that the act or practice occurred in [a] course of conduct involving trade or commerce; (3) that [defendant] intended [plaintiff] to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005)).

11

In moving to dismiss Bruner's ICFA claim, AllianceOne argues that Bruner has (1) failed to plead she was deceived by AllianceOne's actions, and (2) failed to state a claim for actual damages. Mot. Dismiss at 8–9. AllianceOne's first argument is more or less dead on arrival. At various points in her complaint, Bruner states that she was deceived. Am. Compl. ¶ 59 ("Plaintiff did in fact rely on Defendant's deceptive and unfair acts to her detriment as she was led to believe that her bankruptcy had no legal effect and was forced to retain counsel as a result of Defendant's misrepresentations."); *see also id.* ¶ 32 ("Plaintiff was in a state of utter confusion as she was led to believe her bankruptcy had no legal effect."). Thus, Bruner has adequately pleaded acts of deception and that she was in fact deceived.

But AllianceOne's second argument has stronger footing. The only damages Bruner alleges in her complaint are that she "expended time and incurred costs consulting with her attorneys as a result of [AllianceOne's] deceptive collection actions." *Id.* ¶ 30; *see also id.* ¶ 59. In her response, she clarifies that her complaint "cited the costs she incurred in bringing [this] suit," which she filed "as her only means of getting [AllianceOne] to cease its harassment." Resp. at 5. But costs incurred in bringing an ICFA claim cannot constitute "actual damages" under the statute. Rather, the ICFA provides separately for recovery of attorney's fees and costs in the event of a successful suit. 815 Ill. Comp. Stat. 505/10a(c). Courts have been uniform in holding that attorney's fees and costs incurred in bringing a suit under the ICFA are not actual damages. *Bednar v. Pierce & Assocs., P.C.*, No. 16 C

6638, 2016 WL 6647944, at *4 (N.D. Ill. Nov. 10, 2016); *Garcia v. Receivables Performance Mgmt., LLC*, No. 14 C 5367, 2014 WL 5543885, at *2 (N.D. Ill. Nov. 3, 2014). If Bruner had "filed an appearance or incurred any expenses in *defending*" a debt collection lawsuit, such an expenditure of time and money could constitute actual damages. *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 756 (N.D. Ill. 2012) (emphasis added). But that is not what she claims here.

In her response, Bruner raises for the first time the novel claim that "any usage of minutes on [her] cell phone plan" or any decrease in "the value of [her] cell phone plan, battery life, storage, or functionality" occasioned by AllianceOne's calls constitute actual damages as well. Resp. at 5–6. Of course, she cannot amend her complaint, which is bereft of her cellular damage theory, by her response. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). But in any event, the cases she cites in support of her theory all address what constitutes being "charged" for a call under the Telephone Consumer Protection Act (TCPA). Resp. at 5–6; *see* 47 U.S.C. § 227. These cases reason that, where a cell phone subscriber purchases a cell phone plan, the subscriber is in a sense "charged" for a TCPA-offending call by virtue of having paid for a cell phone plan in the first place. *E.g.*, *Fini v. Dish Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013).

Whatever the merits of this theory under the TCPA, it holds no water where the ICFA is concerned. Actual damages under the ICFA must follow from "'actual pecuniary loss.'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)). They must be

calculable and "measured by the plaintiff[']s loss." *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009). Bruner's asserted cellular damages—depreciation of the value of her cell phone plan (without any allegation of additional costs incurred), battery life, storage, and functionality—are not plausibly calculable or measurable. Thus, they cannot constitute actual damages under the ICFA. *Nelson v. Ashford Univ., LLC*, No. 16-CV-3491, 2016 WL 4530325, at *3 (N.D. Ill. Aug. 29, 2016) (rejecting a similar theory of cellular damages premised on vague notions of diminished service and storage, and noting that the plaintiff did not allege "any cost that would not have otherwise occurred, such as overage charges for telephone or data services"). Because Bruner does not plead actual damages, her ICFA claim is dismissed.

## Conclusion

For the foregoing reasons, AllianceOne's motion to dismiss [30] is granted in part and denied in part. Bruner's claims under the FDCPA in Count I of her First Amended Complaint may proceed as alleged. Her ICFA claim in Count II, however, is dismissed.

**IT IS SO ORDERED.**          **ENTERED  2/28/17**

_____
**John Z. Lee
United States District Judge**

14